Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1077 | **DATE** | September 11, 2002 |
| **CASE TITLE** | Castrol Indust N.A. v. Airosol Co Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Third-party defendant's motion to dismiss Counts I-VI of the third-part complaint [ ] is granted. ENTER MEMORANDUM OPINION.

(11) X [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| X | Notices mailed by judge's staff. | | SEP 1 3 2002 | | |
| | Notified counsel by telephone. | | date docketed | | 30 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to _____ | | 9/12/02 | | |
| | | | date mailed notice | | |
| KAM | courtroom deputy's initials | Date/time received in central Clerk's Office | KAM mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CASTROL INDUSTRIAL NORTH AMERICA INC., ) ) ) Plaintiff, ) ) v. ) ) AIROSOL COMPANY, INC., ) ) Defendant. ) ) ------------------------------) ) AIROSOL COMPANY, INC., ) ) Third-Party Plaintiff, ) ) v. ) ) SEXTON CAN COMPANY, INC., ) ) Third-Party Defendant. ) | No. 01 C 1077 |

DOCKETED SEP 1 3 2002

### MEMORANDUM OPINION

Before the court is the third-party defendant's motion to dismiss Counts I-VI of the third-party complaint. For the reasons explained below, the motion is granted.

### BACKGROUND

Plaintiff Castrol Industrial North America Inc. ("Castrol") brings this products liability action against Airosol Company, Inc. ("Airosol"), claiming, inter alia, that defendant manufactured

unsatisfactory aerosol cans that plaintiff purchased for ultimate distribution to automobile owners. The complaint alleges the following facts. In fall 1998, Castrol considered marketing a new product consisting of a mixture of oil and gas for use by consumers to recharge an automobile's air conditioning system. Castrol retained Airosol for advice on the selection of an appropriate container and testing of the manufactured product. After receiving information and oil and gas samples from Castrol, Airosol advised that the mixture be blended and placed in a certain type and size of aerosol can manufactured by third-party defendant Sexton Can Company, Inc. ("Sexton"), and that the filled Sexton cans be tested in a certain manner. Airosol provided Castrol with a price estimate for manufacturing and testing the product in accordance with its advice.

Castrol then contracted with Airosol to manufacture and test the product. Pursuant to the agreement, Castrol would supply the oil and Airosol would supply the gas and the Sexton cans. Airosol then filled, tested and shipped 179,604 cans for packaging by Fas-Pak Inc ("Fas-Pak"). After Fas-Pak received the cans, it assembled "Recharge Kits," each of which contained two cans and a hose, and delivered them to various retailers. Castrol alleges that by June 1999, over 71,000 cans were in the marketplace. Castrol paid Airosol $378,471.00 for the filled, tested and shipped cans and for

approximately 46,000 empty cans located on Airosol's premises.

Between late May 1999 and mid-August 1999, Castrol was informed that the cans in Recharge Kits purchased by consumers in various states had exploded and caused personal injury and property damage. Castrol contends that in its investigation of these reports, it learned that Airosol knew or should have known about the likelihood of such explosions if the Recharge Kits were kept in automobiles. Castrol also learned that there had been previous "problems" with the Sexton Cans. Castrol stopped selling the Recharge Kits and recalled all kits in the marketplace.

The complaint against Airosol contains the following claims: professional negligence (Count I); intentional misrepresentation (Count II); negligent misrepresentation (Count III); breach of contract (Counts IV and V); breach of implied warranty of fitness for a particular purpose (Count VI); breach of implied warranty of merchantability (Count VII); strict liability (Count VIII); and negligence (Count IX).

Airosol filed a third-party complaint against Sexton, alleging, <u>inter alia</u>, that Sexton negligently designed, manufactured, and tested the aerosol cans and failed to warn that the cans would not vent properly and would instead rupture and explode. Airosol brings six claims against Sexton seeking contribution under the Illinois Contribution Act (the "Contribution

Act"), 740 ILCS 100/2: professional negligence (Count I); negligent misrepresentation (Count II); breach of implied warranty of fitness for a particular purpose (Count III); breach of implied warranty of merchantability (Count IV); strict liability (Count V); and negligence (Count VI). The third-party complaint also contains a breach of contract claim (Count VII).

Sexton now moves to dismiss Counts I-VI of the third-party complaint on the ground that they are barred by the economic loss doctrine.

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 294 (2d ed. 1990). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999); <u>Jang v. A.M. Miller & Assocs.</u>, 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir. 1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984));

Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir.), cert. denied, 519 U.S. 1008 (1996).

The economic loss doctrine, also known in Illinois as the Moorman doctrine, precludes tort liability in cases where the plaintiff suffers purely economic losses. See Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443 (Ill. 1982). "'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits--without any claim of personal injury or damage to other property' as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Moorman, 435 N.E.2d at 449 (citation omitted). There are three exceptions to the economic loss doctrine:

> (1) where the plaintiff sustained damage, i.e., personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, i.e., fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions.

In re Chicago Flood Litig., 680 N.E.2d 265, 275 (Ill. 1997) (citations and emphasis omitted).

### A.    Strict Liability and Negligence (Counts V and VI)

Castrol and Airosol contend that the first exception to the

economic loss doctrine applies to these claims because the complaint alleges that personal injuries and property damage occurred as a result of sudden and dangerous occurrences--the aerosol can explosions. Sexton does not dispute that the complaint adequately alleges sudden and dangerous occurrences, but argues that the exception applies to personal injury and property damage sustained only by the <u>plaintiff</u>.

"Absent injury to a <u>plaintiff's</u> person or property, a claim presents an economic loss not recoverable in tort." <u>Mars, Inc. v. Heritage Builders, Inc.</u>, 763 N.E.2d 428, 436 (Ill. App. Ct. 2002) (emphasis added). Thus, personal injury to consumers (which is alleged in the complaint) will not suffice, and there is no personal injury alleged to the plaintiff, which is a corporation. Accordingly, for the strict liability and negligence claims to escape the <u>Moorman</u> doctrine, the complaint must allege damage to the plaintiff's property. "Mere damage to <u>any</u> property is not sufficient; the property must be 'other property,' extrinsic from the product itself." <u>Id.</u>

The complaint alleges that "Castrol was informed" that certain aerosol cans "purchased by consumers" exploded and resulted in "damage to customers' person and property and to other Castrol property." (Complaint, ¶ 13.) Castrol also seeks damages "for the loss of its own property." (<u>Id.</u>, ¶ 15.) The complaint fails to

specify exactly <u>what</u> "Castrol property" was damaged. Castrol explains in its brief that this "other property" was the packaged Recharge Kits, distinct from the aerosol cans that were a component of those kits. (Castrol's Response at 5 n.2.)

We do not believe that it is reasonable to infer from the complaint that Castrol suffered any property damage due to the alleged can explosions. Even assuming that the Recharge Kits constitute a separate product extrinsic from the aerosol cans (which is debatable), the complaint does not allege that any of the cans in kits that remained Castrol's property exploded and caused damage. Rather, the only reasonable inference from the complaint is that some consumers alone suffered property damage as a result of the explosions. Damage to someone else's property is not a sufficient basis for applying this exception to the <u>Moorman</u> doctrine. The contribution claims for strict liability and negligence must be dismissed.

## B. <u>Negligent Misrepresentation (Count II)</u>

Castrol and Airosol argue that the third exception to the <u>Moorman</u> doctrine applies to this claim because the complaint alleges that Airosol was in the business of supplying information for the guidance of others in their business transactions.

Where a defendant supplies information that is merely ancillary to a service or the sale of a product, it is not

considered to be in the business of supplying information for the guidance of others in their business dealings. See <u>Tolan & Son, Inc. v. KLLM Architects, Inc.</u>, 719 N.E.2d 288, 296 (Ill. App. Ct. 1999). However, where the value of a defendant's services lies in the analytical work (where the end product is ideas), it is in the business of supplying information for the guidance of others in their business dealings. See <u>id.</u> at 297. The court in <u>Tolan</u> explained the relevant inquiry:

> "The Illinois Supreme Court's test for determining whether a defendant 'is in the business of supplying information for the guidance of others in their business transactions' is whether the end product of the relationship between plaintiff [sic] is a tangible object (<u>i.e.</u>, a product) which could be readily described in a contract or whether it is intangible. In short, if the intended end result of the plaintiff-defendant relationship is for the defendant to create a product, a tangible thing, then the defendant will not fit into the 'business of supplying information' negligent misrepresentation exception.'"

<u>Id.</u> at 296 (citations omitted).

Castrol's negligent misrepresentation claim asserts that Airosol, "[a]s experts in liquid and aerosol packaging," "is in the business of supplying information for the guidance of others in their business transactions." (Complaint, ¶ 33.) In particular, the complaint alleges that Airosol provided Castrol with "services and products." (Complaint, ¶ 1.) It further alleges that "[b]ecause of Airosol's expertise with aerosol products and

packaging," Castrol retained Airosol "to advise Castrol as to the selection of the appropriate container for the mixture and the appropriate testing of the manufactured product," id., ¶ 6, and that Airosol provided such advice, id., ¶ 8. Thereafter, Castrol contracted with Airosol to manufacture and test the product. (Id., ¶ 9.)

It is clear from the allegations of the complaint that the intended end result of the relationship between Castrol and Airosol was for Airosol to create a product--filled aerosol cans. Indeed, the complaint even alleges that Airosol provided a quotation to Castrol "for Airosol to manufacture and test the product in accordance with its advice." (Complaint, ¶ 8.) Accordingly, the "business of supplying information" exception to the Moorman doctrine does not apply, and the claim seeking contribution for negligent misrepresentation must be dismissed.

## C. **Professional Negligence (Count I)**

Castrol asserts that the "Illinois Supreme Court also recognizes an exception to the Moorman doctrine for a professional negligence claim where the duty of a service professional arises outside of the contract between the parties," citing Congregation of the Passion v. Touche Ross & Co., 636 N.E.2d 503 (Ill. 1994).[1]

---

[1] Airosol also argues that the professional negligence claim is "excluded from the economic loss doctrine," (Airosol's Response at 7), but offers no substantive analysis of the issue as to this particular claim.

(Castrol's Response at 8.)

In <u>Congregation of the Passion</u>, the Illinois Supreme Court held that "[t]he economic loss doctrine does not bar recovery in tort for the breach of a duty that exists independently of a contract." 636 N.E.2d at 515. According to the court, an attorney-client or accountant-client relationship fit within this limited exception (and an architect-client relationship did not) because the "knowledge and expertise [such a professional offers] cannot be memorialized in contract terms, but is expected independent of the [professional]'s contractual obligations." <u>Id.</u> at 514-15; <u>see also</u> <u>Chicago Housing Auth. v. J.A. Hannah Inv. Advisory Serv., Inc.</u>, No. 95 C 5251, 1996 WL 328033, at *6 (N.D. Ill. May 9, 1996) (stating that the "exceptions are premised on the idea that, because lawyers and accountants are professionals necessarily entrusted with a large degree of independent and discretionary latitude in decisionmaking, they owe a 'duty of competence' which exists independently of explicit contractual provisions.").

Thus, the issue is the source of the duty owed to the plaintiff. This is a fuzzy inquiry that courts have found difficult to apply, <u>see</u> <u>Fireman's Fund Ins. Co. v. SEC Donahue, Inc.</u>, 666 N.E.2d 881, 887 (Ill. App. Ct. 1996) (citing the dissenting opinion in <u>Congregation of the Passion</u>, which noted that

the application of <u>Moorman</u> to professional malpractice has developed in a confusing fashion). Nonetheless, we believe that Illinois courts would not extend this limited <u>Moorman</u> exception to the facts alleged in the complaint, as any duty owed to Castrol simply arose from the purported contract. Castrol argues that Airosol had a duty to apply the knowledge and skills of an expert in liquid and aerosol packaging, but wholly fails to explain how or why this duty was "extracontractual." In short, the relationship between Castrol and Airosol was simply not analogous to an attorney-client or accountant-client relationship, where a client is not required or expected to be able to direct the conduct of the professional through contractual provisions, and where the ultimate result of the relationship is something intangible. Therefore, the contribution claim for professional negligence must be dismissed.

D. **Breach of Implied Warranties (Counts III & IV)**

Sexton contends that the breach of implied warranty claims also must be dismissed because there must be <u>tort</u> liability in order to state a contribution claim. Under Illinois law, "potential liability" sounding in tort is sufficient for purposes of the Contribution Act. In other words, if either party's liability to the injured party is premised <u>solely</u> on a contract theory, there can be no action for contribution. <u>See</u> <u>North Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.</u>, 89 F.3d 452, 456-57 (7th

Cir. 1996) (citing <u>St. Paul Fire & Marine Ins. Co. v. Great Lakes Turnings, Ltd.</u>, 774 F. Supp. 485, 488 (N.D. Ill. 1991) and <u>Cirilo's, Inc. v. Gleeson, Sklar & Sawyers</u>, 507 N.E.2d 81, 83 (Ill. App. Ct. 1987)). Because we are dismissing the claims against Sexton that are based upon tort theories, Sexton is not "potentially liable" in tort. The Contribution Act thus precludes the claims seeking contribution for breach of implied warranty.

## CONCLUSION

For the foregoing reasons, third-party defendant Sexton Can Company, Inc.'s motion to dismiss Counts I-VI of the third-party complaint is granted.[2]

DATE: September 11, 2002

ENTER:  _____
John F. Grady, United States District Judge

---

[2] We leave to Airosol the decision as to whether to move for dismissal of any claims contained in the original complaint.